FIRST UNITED CORPORATION      *     IN THE

         Plaintiff,         *     CIRCUIT COURT

vs.                            *     FOR

DRIVER OPPORTUNITY PARTNERS I LP,    *     GARRETT COUNTY
DRIVER MANAGEMENT COMPANY LLC,
and J. ABBOTT COOPER               *

         Defendants.        *     Case No.:  C-11-CV-20-000042

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff First United Corporation ("First United" or the "Company"), by its undersigned attorneys, hereby files this Amended Complaint for Declaratory Judgment, pursuant to § 3-406 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland and Maryland Rule 2-341, for purposes of determining a question of actual controversy between the parties, and terminating uncertainty and controversy giving rise to these proceedings.

## SUMMARY OF THE DISPUTE

1.      First United, a bank holding company based in Garrett County, Maryland, is prosecuting this action to resolve live, actual disputes concerning efforts by Driver Opportunity Partners I, LP (the "Fund") and the other Defendants to (a) vote shares of First United common stock that they own within five years of purchase, including at the Company's June 11, 2020 annual meeting of stockholders (the "2020 Meeting") and future meetings, and (b) nominate a slate of director candidates to the Company's board of directors (the "Board") within five years of their purchase of Company common stock, including at the 2020 Meeting and future meetings. As explained below, the five-year prohibition on voting the shares is mandated by Section 3-314 of the Financial Institutions Article of the Annotated Code of Maryland ("FI Article § 3-314").

2.      In general, FI Article § 3-314 requires pre-approval from the Maryland Commissioner of Financial Regulation (the "Maryland Commissioner") before a person may acquire shares of a Maryland financial institution if there is any doubt that the acquisition will affect the power to direct or cause direction of the management or policy of the institution.  As a bank holding company, First United and its subsidiary, First United Bank & Trust (the "Bank"), are financial institutions within the scope of FI Article § 3-314 and are subject to supervision by the Maryland Commissioner.

3.      Since at least March 26, 2019, Defendants have had a stated plan to affect the power to direct or cause the direction of the management or policy of First United.  Consistent with that plan, Defendants ran a "withhold campaign" in the Spring of 2019 to unseat three of First United's then-current directors, but were unsuccessful.  Defendants then engaged in a proxy contest with respect to the 2020 Meeting, filing with the U.S. Securities and Exchange Commission (the "SEC") a definitive proxy statement and other materials encouraging shareholders to vote for the candidates that Defendants had nominated for election to First United's Board at the 2020 Meeting.  In addition to their attempt to take control of the Board, Defendants aimed to force a sale of First United or the Bank.

4.      In light of this stated plan to direct the management and policy of First United, Defendants were obligated under FI Article § 3-314 to seek prior approval of the Maryland Commissioner *before* acquiring their shares of First United.  It is beyond dispute, however, that Defendants did not seek approval from the Maryland Commissioner before acquiring any of their shares of the common stock of First United.

5.      As a result, the Maryland Commissioner began a formal administrative investigation, which lasted more than six months, into whether Defendants' acquisitions of First

United stock violated FI Article § 3-314.  On May 14, 2020, the Maryland Commissioner issued letters (collectively, the "May 14 Letter") to the Defendants and their three director candidates, concluding that "there is sufficient evidence to find that" Defendants' failures to apply for prior approval of their shares of First United common stock "constituted a violation of the requirements of" FI Article § 3-314.  *See* May 14 Letter to the Fund attached as Ex. 1.

6.     On May 22, 2020, the Maryland Commissioner entered into a Settlement Agreement and Consent Order ("Settlement") with Defendants under which the Maryland Commissioner conditionally agreed to take no enforcement action against any of the Defendants for violation of FI Article § 3-314.  First United is not a party to that Settlement, was uninvolved with its negotiation, and had no knowledge of it until Defendants publicly announced it.  The Settlement does not bind First United nor does the Settlement exonerate Defendants of their violation of FI Article § 3-314.  Indeed, the Settlement specifically states that the Maryland Commissioner found "there was sufficient evidence to support" the alleged violations of FI Article § 3-314, as the Maryland Commissioner had concluded in his May 14 Letter.  *See* Settlement attached as Ex. 2.

7.     Although the Maryland Commissioner explained in the May 14 Letter that his office has discretion to pursue remedies under FI Article §§ 2-115 and 2-116, he nonetheless emphasized that "FI [Article] § 3-314(e) contains a consequence to a violation of FI [Article] § 3-314 that has been mandated by the General Assembly."  *See* Ex. 1.  Pursuant to FI Article § 3-314(e), voting stock acquired in violation of FI Article § 3-314 may not be voted for a period of five years.  Thus, regardless of the Settlement, the statute prohibited and prohibits Defendants from voting their shares, both at the 2020 Meeting and at any future meeting during the five years following Defendants' purchase of Company stock.  As a result and pursuant to Article II, Section

4 of First United's Amended and Restated Bylaws, as amended (the "Bylaws"), Defendants were and are ineligible to place names of director candidates into nomination at the 2020 Meeting and at any future meeting in the five years following Defendants' purchase of Company stock. *See* Bylaws attached as Ex. 3.

8.      Notwithstanding the Maryland Commissioner's finding of "sufficient evidence" of a violation, and First United's statements (including its preliminary proxy statement filed with the SEC on March 30, 2020) that a finding of a violation of FI Article § 3-314 prohibited Defendants from voting their shares for five years, Defendants announced that they intended to try to vote their First United shares and nominate a slate of director candidates at the 2020 Meeting. With this lawsuit pending, and to avoid more costly and unnecessary fighting, First United conditionally accepted Defendants' nominations of their three director candidates as valid and tallied the votes attributable to Defendants' shares of stock, subject to recertification of the voting results pending the outcome of this litigation.  Shareholders overwhelmingly rejected Defendants' director candidates at the 2020 Meeting.

9.      Despite the passing of the 2020 Meeting, the parties' dispute continues.   In particular, Defendants have expressly stated that they (a) dispute that FI Article § 3-314 required them to seek pre-approval from the Maryland Commissioner, (b) intend to vote their shares at future shareholder meetings, and (c) intend to conduct future proxy contests supporting the election of director candidates they plan to nominate until they have taken control of the Company's Board. Indeed as detailed below, Defendants threatened to sue First United if it would not commit to honoring its director nominations and count its shares at the 2020 Meeting, and that threat precipitated this lawsuit.  Also, before the 2020 Meeting, Defendants threatened to repeat proxy contests at future meetings until they were able to take control of the Company's Board.  And

recent communications from Defendants to First United management underscore that Defendants intend to renew their proxy contest for future stockholder meetings.

10.     These threats, the extraordinary costs and disruptions that would attend any future proxy contests, and their negative impact on First United and its shareholders, come amidst First United's ongoing contention that Defendants have no right to vote their shares or nominate director candidates owing to their violations of FI Article § 3-314.  In light of this dispute, First United accordingly seeks a declaration from this Honorable Court that (a) pursuant to FI Article § 3-314(e), Defendants were and are prohibited from voting their respective shares of First United common stock for five years, including at the 2020 Meeting, and (b) First United's Bylaws did and do not permit Defendants to place names in nomination to stand for election as directors of First United at the 2020 Meeting or at any other meeting of shareholders that is held during the period of time that Defendants are prohibited from voting their shares of First United common stock due to Defendants' violation of FI Article § 3-314.

## PARTIES

11.     Plaintiff First United is a publicly-traded Maryland corporation that is registered with the Board of Governors of the Federal Reserve System as a bank holding company under the Bank Holding Company Act of 1956, as amended.  First United's principal place of business at 19 South Second Street, Oakland, Maryland 21550. Its primary business is serving as the parent company of the Bank. The Bank is a Maryland trust company with commercial banking powers that provides a complete range of retail and commercial banking services to businesses and individuals through its 25 banking offices, one customer care center, and 32 Automated Teller Machines in Allegany County, Frederick County, Garrett County, and Washington County in

Maryland, and in Mineral County, Berkeley County, Monongalia County and Harrison County in West Virginia.

12.     Defendant the Fund is a Delaware limited liability partnership with its principal place of business at 250 Park Avenue, 7th Floor, New York, New York 10177.

13.     Defendant Driver Management Company LLC is a Delaware limited liability company and general partner of the Fund with its principal place of business at 250 Park Avenue, 7th Floor, New York, New York 10177.

14.     Defendant J. Abbott R. Cooper is an individual who is a resident of Connecticut and who serves as the managing member of Driver Management Company LLC.

15.     The Fund, Driver Management Company LLC and Mr. Cooper are collectively referred to herein as "Driver" or "Defendants."  Driver, among other things, operates as an "activist shareholder" which seeks to invest in target companies with the purpose of gaining control of the target company and thereafter forcing a sale of the target company to a corporate acquirer.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this case pursuant to Md. Code Ann., Cts. & Jud. Proc. Art. §§ 1-501, 6-102(a) and 6-103 (Repl. Vol. 2013 & Supp. 2014).  Personal jurisdiction over Defendants exists because, among other things, Defendants have caused and seek to cause tortious injury in the State of Maryland, including by: (a) entering into a Joint Filing and Solicitation Agreement dated November 19, 2019 pursuant to which Defendants and their director candidates agreed to, among other things, "form the Group for the purpose of (i) soliciting proxies or written consents for the election of the persons nominated by the Group to the Board at the Annual Meeting; (ii) taking such other actions as the parties deem advisable; and (iii) taking all other action necessary or advisable to achieve the foregoing[]" and, thereby, violate FI Article § 3-

314 as set forth in more detail below; (b) directing multiple mailings to First United Shareholders, including to numerous shareholders of First United who are also residents of Garrett, Frederick, Allegany, and Washington Counties, for the purpose of soliciting proxies to vote the shares of First United common stock owned by such shareholders for the election of the director candidates nominated by Driver; and (c) notifying First United of their intentions to follow through on their various threats to ignore and violate FI Article § 3-314(e) at Company shareholder meetings, including the 2020 Meeting and future meetings. Personal jurisdiction also exists over all Defendants because they have all acquired shares of First United common stock and have therefore transacted business and/or engaged in business in the State of Maryland.

17.     Venue is appropriate in this Court pursuant to Md. Cts. & Jud. Proc. Art. §§ 6-201(a) and (b). (Repl. Vol. 2013 & Supp. 2014).

## SUMMARY OF CASE AND STATEMENT OF FACTS

18.     First United seeks a declaratory judgment from this Court with respect to two issues relating to the shares of First United common stock owned by the Defendants.

19.     *First*, the Company seeks a declaration from this Court that FI Article § 3-314(e) prohibited and prohibits the Defendants from voting their respective shares of First United common stock for five years, including at the 2020 Meeting and future meetings, because of the undisputed fact that Defendants did not seek pre-approval from the Maryland Commissioner for their acquisition of First United shares, as required under FI Article § 3-314.  The statute prohibits any person from making a "stock acquisition" of a Maryland bank holding company or a Maryland bank unless that person has filed an application therefor with the Maryland Commissioner at least 60 days prior to the date such stock acquisition is to become effective.  Under FI Article § 3-314(a), a stock acquisition is defined to include "[a]n acquisition of the outstanding voting stock of a

commercial bank or bank holding company in this State, if the acquisition will affect the power to direct or to cause the direction of the management or policy of any banking institution or bank holding company."  Importantly, FI Article § 3-314(c)(3) provides that "[i]f there is any doubt as to whether the stock acquisition will affect the power to direct or cause direction of the management or policy of a commercial bank or bank holding company, the doubt shall be resolved in favor of reporting to the Commissioner."

20.     It is undisputed that none of the Defendants made an application or any other report with the Maryland Commissioner at least 60 days prior to any of their stock acquisitions.

21.     Each of the Defendants' acquisitions of shares of First United common stock constituted a "stock acquisition" as defined by FI Article § 3-314(a).  Indeed, Defendants purchased Company stock as part of a campaign to gain control of the Company's Board and force a sale of the Company or the Bank.  At a minimum, the Defendants' public and private statements, threats, and demands and their attempt to replace three of eleven directors (and threat to replace more in the future) created "any doubt" as to whether their acquisitions of First United common stock constituted "stock acquisitions," which fact required them to file an application with the Maryland Commissioner at least 60 days prior to their stock acquisitions.

22.     Pursuant to FI Article § 3-314(e), "[v]oting stock that is acquired in violation of this section may not be voted for 5 years."  The Maryland Commissioner is the Maryland agency charged with the regulation of Maryland financial institutions, including the non-exclusive ability to interpret and enforce applicable provisions of the FI Article.  In his May 14 Letter, the Maryland Commissioner, Antonio P. Salazar, stated that "sufficient evidence" exists that the acquisitions of First United stock by the Fund and other members of its shareholder Group violated FI Article § 3-314.  Nevertheless, Defendants insist that they were entitled to vote their shares of First United

8

common stock at the 2020 Meeting and may do so at future meetings as well.  And, as noted, Driver threatened litigation against First United if First United takes any action to interfere with the Defendants' ability to vote their shares.

23.     Citing their Settlement with the Maryland Commissioner, under which the Maryland Commissioner conditionally agreed to not take enforcement action against Defendants, Defendants contend that FI Article § 3-314 is of no force and effect under the circumstances now present.  But the Settlement did not involve First United, which is not a party to the Settlement and had no involvement whatsoever in its negotiation or its terms.  Nothing in FI Article § 3-314, or in the Settlement, purports to grant the Maryland Commissioner exclusive authority to enforce the statute.  In particular, First United has a right to seek enforcement of statutory protections enacted by the Maryland General Assembly and intended to protect competition and the safety and soundness of financial institutions in the State of Maryland such as First United and the Bank.

24.     *Second*, First United also seeks a declaration that, for five years from the last of their acquisitions of First United shares, any nominations by Defendants of director candidates for election to the Board violates the Company's Bylaws, which allow nominations to be made only by a shareholder that is entitled to vote for the election of directors.  Specifically, Section 4 of Article II of the Bylaws provide that, "[n]omination for election of members of the Board of Directors may be made by the Board of Directors or by any stockholder of any outstanding class of capital stock of the Corporation *entitled to vote* for the election of Directors." Ex. 3 (emphasis added).

25.     Because Defendants are prohibited by operation of FI Article § 3-314(e) from voting in Company elections for five years, Defendants were not entitled to nominate their director candidates at the 2020 Meeting, including the Fund's conditional nomination of Michael J.

Driscoll, Lisa Narrell-Mead, and Ethan C. Elzen as director candidates (the "Driver Candidates"), and are not entitled to nominate director candidates at future meetings within the five-year prohibition mandated by FI Article § 3-314(e).  Moreover, and consistent with the Company's Bylaws, First United should not be required to permit such nominations.  As a basic matter of corporate governance, First United has the right to interpret and enforce the Company's own Bylaws and to determine thereunder whether a shareholder is entitled to vote for the election of Directors.  Contrary to the applicable Bylaw, Defendants insist that the Fund could properly nominate the Driver Candidates at the 2020 Meeting and may nominate director candidates in the future; and Defendants have threatened litigation against First United if First United takes any action to interfere with the Fund's nomination of director candidates or efforts to vote its shares of First United stock.

26.     Defendants' intentions with regard to First United are clear.  On March 26, 2019, March 28, 2019, and April 2, 2019, Driver filed Notices of Exempt Solicitation with the SEC in respect of First United's 2019 annual meeting of shareholders in which Driver urged shareholders to send a strong message to the Board by voting against First United's three director nominees: "Given the likelihood of FUNC's ability to find a buyer who would pay a meaningful premium to FUNC's current market value as well as potential challenges to FUNC's ability increase (or maintain) shareholder value on an independent basis, Driver believes that FUNC should take immediate and decisive steps to maximize shareholder value and urges other shareholders to (i) demand FUNC immediately hire qualified and experienced financial advisors and explore a sale; (ii) vote against FUNC's nominees for director; and (iii) vote against approving the compensation paid to FUNC's executive officers in 2018."  Driver's withhold campaign was unsuccessful.

10

27. Then, on September 6, 2019, Driver filed a Schedule 13D with the SEC disclosing that Driver had acquired beneficial ownership of 360,637 shares, or about 5.1%, of the Company's outstanding common stock with the purpose of changing and influencing the control and management First United.  (As a Group, Defendants and the Driver Candidates collectively acquired more than 366,000 shares of First United common stock, or roughly 5.3% as of the record date for the 2020 Meeting.)

28. Driver's filing of a Schedule 13D constituted an admission by Driver that its acquisitions of First United stock were intended to affect the power to direct or to cause the direction of the management or policy of First United.  Pursuant to Section 13(d) of the Securities Exchange Act of 1934 and Rule 13d-1(a) promulgated thereunder, a person (or group of persons acting together) who acquires beneficial ownership of more than 5% of a class of equity securities of a publicly traded company (like First United) and who did so "for the purpose or with the effect of changing or influencing control of the issuer of such securities" must file with the SEC a Schedule 13D disclosing that intention.  *See* 15 U.S.C. § 78m(d)(1) and 17 C.F.R. § 240-13d-1(a), (b), (c) and (f)(2); *cf.* 17 C.F.R. § 240-13g-1(a) (requiring a filing on Scheduled 13G for 5% owners who hold the securities for investment purposes only).  By filing a Schedule 13D, Driver acknowledged that it acquired First United stock for the purpose or with the effect of changing or influencing control of First United.

29. Driver's other SEC filings, press releases, publicly-filed presentations, and e-mails and other communications to the Company further establish that Driver's  purpose and objective in acquiring shares of First United's common stock were and are to affect the power to direct or to cause the direction of the management and policy of First United by forcing a sale of the Company and/or the Bank, and to influence other stockholders in this regard.  Driver has publicly and

privately demanded, on more than a dozen occasions, that the Board hire an investment banker and commence a sale process.

30.     In a September 26, 2019 press release, Driver threatened to nominate its own slate of directors and engage in "an irrational, wasteful proxy contest" with respect to the 2020 Meeting unless the Board acceded to Driver's demands to commence a sale process.  Driver's plan was to nominate its own slate of director nominees and seek enough voting authority to replace 27% of the Company's board members.  By e-mail dated October 31, 2019, Driver identified three individuals that it intended to nominate for election to the Board at the 2020 Meeting. These individuals are the three Driver Candidates.  On December 3, 2019, Driver submitted to First United a notice of intent to nominate directors at the 2020 Meeting in which Driver named the Driver Candidates as the proposed nominees.

31.     Between August 2019 and March 2020, the Driver Candidates acquired shares of First United common stock.  On or about November 19, 2019, Defendants and the Driver Candidates entered into a Joint Filing and Solicitation Agreement for the express purpose of pursuing Driver's agenda to solicit proxies to vote shares of First United common stock in favor of the election of the Driver Candidates. In the late Fall of 2019, the Maryland Commissioner began an investigation into the circumstances under which Driver acquired its shares of First United common stock, and the effect of those acquisitions on First United's operations and policies.

32.     On May 14, 2020, after what he termed an "extensive investigation," the Maryland Commissioner sent a letter to Driver stating that "[t]he investigation has been completed and staff has concluded that there is *sufficient evidence* to find that Driver's failure to apply for prior approval of the referenced stock purchase *constituted a violation* of Maryland Annotated Code FI

Article § 3-314." Ex. 1 (emphasis added).  Identical letters were sent to each of the Driver

Candidates with respect to their respective acquisitions of shares of First United common stock.

The Maryland Commissioner further informed Defendants that "pursuant to FI Article § 3-314(e),

voting stock that is acquired in violation of the § 3-314 may not be voted for a period of five (5)

years.  Prior approval was not sought, and so, the stock acquisition was not approved by my

Office."   Although the Maryland Commissioner stated that his office "has discretion in

determining what, if any, of the remedies set forth in FI [Article] §§ 2-115 and 2-116 may be

pursued under these circumstances," he nonetheless emphasized that "FI [Article] § 3-314(e)

contains a consequence to a violation of FI [Article] § 3-314 that has been mandated by the General

Assembly."  Ex. 1.

33.     Notwithstanding the May 14 Letter, counsel for Driver sent a letter to First United's

counsel in which Driver threatened First United with legal action if First United did not confirm

that First United would not take "steps inconsistent with recognizing the entirety of Driver's

shareholder rights, including its voting rights with respect to any or all of its shares and its right

to nominate directors to be voted upon by First United's shareholders."  *See* May 18, 2020 letter

attached as Ex. 4.  To protect its rights, First United instituted this action on May 20, 2020.

34.     On May 22, 2020, the Maryland Commissioner entered into the Settlement with

Driver.  First United was neither a party to the Settlement nor a participant in any negotiation of it.

Indeed, First United was unaware of the Settlement until Defendants made it public.  Under the

Settlement, the Maryland Commissioner conditionally agreed to not take enforcement action

against the Defendants if Defendants, among other things, agreed to comply in the future with all

applicable Maryland laws and regulations, including FI Article § 3-314, and, for a period of three

years, notify the Maryland Commissioner of any intent to acquire capital stock of a Maryland bank

or its parent holding company. The Settlement does not, and does not purport to, absolve Defendants of wrongdoing; instead, the Settlement reiterates that "Agency staff concluded that there was sufficient evidence to support" the alleged violations of FI Article § 3-314.

35. Under the Settlement, Defendants agreed to: (a) reimburse the Maryland Commissioner's costs associated with the investigation; (b) provide notice to the Maryland Commissioner of any future acquisitions of capital stock in a Maryland chartered commercial bank or its associated holding company for a period of three years, in addition to any other requirements of Maryland law, including FI Article § 3-314; (c) release the Maryland Commissioner and other governmental parties from any potential claims; and (d) cooperate fully with all future Maryland Commissioner requests during the specified three-year period to determine compliance with the terms of the Settlement. *See* Ex. 2. Defendants also represented and warranted in the Settlement that they would, going forward, "comply with all applicable statutes, regulations, and other laws governing the acquisition of outstanding voting stock of a Maryland chartered commercial bank or the associated bank holding company, and that they will continue to act in compliance with the applicable statutory or regulatory requirements at all times." *Id.* Accordingly, the Settlement does not, and does not purport to, modify much less enjoin the mandatory voting prohibition set forth in FI Article § 3-314(e).

36. On June 1, 2020, and in an effort to avoid disruption to the 2020 Meeting and the expense of immediate litigation proceedings, First United announced that it would conditionally accept Driver's nominations of the Driver Candidates and tally the votes attributable to the Defendants' and the Driver Candidates' shares of stock present and submitted at the 2020 Meeting, subject to recertification of the voting results should that be necessary once this litigation was resolved.

14

37.     At the 2020 Meeting, shareholders overwhelmingly rejected the Driver Candidates and voted in favor of the Company's nominated directors.  On information and belief, after the 2020 Meeting, the Driver Candidates sold the entirety of their Company stock and are no longer Company stockholders.

38.     In addition to its proxy contest at the 2020 Meeting and its violations of FI Article § 3-314, Driver has expressly stated or implied that it intends to vote its stock at future meetings and continue running proxy contests in the future until it takes control of the Company's Board. For instance, in a meeting with Company directors M. Kathryn Burkey and John McCullough in late March 2020, Mr. Cooper threatened to run proxy fights every year for at least the next three proxy seasons until it has complete control over the Company's Board.  Likewise, in a June 2, 2020 letter to Company shareholders filed with the SEC, Driver stated that it would "likely be a First United shareholder for far longer than [it] originally anticipated," and is considering trying to "replac[e] First United's leadership."

39.     Driver's intent to continue trying to influence the direction of the Company's management and policy in the wake of its proxy loss is also demonstrated by its SEC filings, Twitter posts, and communications to First United.  For instance, in its June 11, 2020 letter, Driver asked the Maryland Commissioner to investigate the ability of the Company's Board and management team to manage the Company and the Bank.  More recently, Driver has continued to communicate with First United management, criticizing, among other things, First United's decision to contest Driver's efforts to replace three of the Company's directors, and the expense to First United of having done so.  In fact, Mr. Cooper has recently sent almost-daily emails to First United's executives, including President and CEO Carissa Rodeheaver and Senior Vice President and CFO Tonya Sturm, as well as to First United's Lead Independent Director, John McCullough

commenting on various aspects of Company operations.  Communications of this sort and frequency are a preamble to shareholder activists' campaigns, used in an effort to threaten to commence, and then justify the commencement of, a proxy contest.

40.     Accordingly, there remains an ongoing dispute over First United's internal affairs, including whether Defendants' shares of First United stock are or are not shares that may be properly voted and that therefore have the right or not under the Company's Bylaws to nominate persons to become directors.

**COUNT I**
**DECLARATORY JUDGMENT**
**(§3-314 of the Financial Institutions Article of the Annotated Code of Maryland)**

41.     First United incorporates by reference the allegations in paragraphs 1-40 as if fully set forth herein.

42.     FI Article § 3-314(e) prohibits the Defendants from voting their respective shares of First United common stock because of their undisputed failures to comply with FI Article § 3-314(b) and (c), which prohibit any person from making a "stock acquisition" unless that person has filed an application therefor with the Maryland Commissioner at least 60 days prior to the date such stock acquisition is to become effective.  Driver failed to make such an application prior to its acquisition of more than 5.0% of common stock of First United with the intent to affect the power to direct or to cause the direction of the management or policy of First United and its subsidiary bank.

43.     Under FI Article § 3-314(a)(3), a "stock acquisition" is defined as "[a]n acquisition of the outstanding voting stock of a commercial bank or bank holding company in this State, if the acquisition will affect the power to direct or to cause the direction of the management or policy of any banking institution or bank holding company."  FI Article § 3-314(c)(3) provides that, "[i]f

16

there is *any doubt* as to whether the stock acquisition will affect the power to direct or cause direction of the management or policy of a commercial bank or bank holding company, the doubt shall be resolved in favor of reporting to the [Maryland] Commissioner." (Emphasis added).

44.     The Maryland Commissioner is charged with regulating the operation and governance of Maryland's financial institutions, including to protect the safety and soundness of Maryland's financial institutions.  On May 14, 2020, the Maryland Commissioner issued the May 14 Letter related to Defendants' acquisitions of shares of First United common stock.  After a months-long investigation, the Maryland Commissioner stated that there was "sufficient evidence" that Defendants' failure to seek prior approval of their acquisitions of First United common stock "constituted a violation of the requirements of" FI Article § 3-314.  Pursuant to the FI Article, and in particular § 3-314(e), voting stock acquired in violation of FI Article § 3-314 may not be voted for a period of five years.

45.     Consistent with the Maryland Commissioner's statement that sufficient evidence of a statutory violation exists, Defendants are prohibited by FI Article § 3-314(e) from voting any of their shares of First United stock.  In particular, Defendants were ineligible to vote their shares at the 2020 Meeting and are also ineligible to vote such shares at any other shareholders' meeting for five years following Defendants' acquisitions of those shares in violation of FI Article § 3-314.  As noted above, Defendants insist that their shares of Company stock were properly voted at the 2020 Meeting and may properly be voted at other shareholder meetings in coming years.

46.     Defendants further assert that First Union lacks standing to assert its claim for declaratory relief because there is purportedly no private right of action under FI Article § 3-314 and enforcement of that provision is relegated solely to the Maryland Commissioner.  But nothing in FI Article § 3-314 limits standing under that provision to the Maryland Commissioner.  And in

any event, as a matter of basic corporate governance, First United must have the right to determine, within the limits of the law and its governing instruments, those shareholders who are "entitled to vote" their shares at its own meetings of shareholders.

47.     Given the parties' differing positions, there exists an actual controversy of justiciable issues between Defendants and First United within the jurisdiction of this Court to resolve with respect to whether Defendants may cast votes at any Company meeting within five years of Defendants' most recent purchase of Company stock.

WHEREFORE, Plaintiff First United hereby seeks a declaration from this Court:

(a)     finding and declaring that Defendants were prohibited from casting votes at the 2020 Meeting and directing that the results of the 2020 Meeting be recertified by the independent Inspector of Elections duly appointed by First United, the recertification to reflect that Defendants' votes were of no effect and did not count in the tally of votes for Director;

(b)     finding and declaring that the Defendants shares of First United common stock may not be voted for a period of five (5) years from the most recent date on which any Defendant acquired shares of First United common stock;

(c)     finding and declaring that First United is not required to count any votes that Defendants attempt to cast at meetings of First United shareholders for a period of five years from the most recent date on which any Defendant acquired shares of First United common stock; and

(d)     awarding First United its reasonable attorneys' fees and costs, and any further relief the Court deems necessary.

## COUNT II
## DECLARATORY JUDGMENT
### (First United Corporate By-Laws)

48.     First United incorporates by reference the allegations in paragraphs 1-47 as if fully set forth herein.

49.     Article II, Section 4 of the Bylaws provide that, "[n]omination for election of members of the Board of Directors may be made by the Board of Directors or by any stockholder of any outstanding class of capital stock of the Corporation *entitled to vote* for the election of Directors." Ex. 3 (emphasis added).

50.     First United has consistently interpreted this section to mean that only a stockholder who is entitled to vote for the election of directors is entitled to nominate a director candidate.

51.     Despite the clear and unambiguous language of this section of the Bylaws, Defendants have asserted that Article II, Section 4 of the Bylaws would allow Driver to nominate candidates for the election even if Driver is not a "stockholder . . . entitled to vote" at the 2020 Meeting and future meetings within five years of the purchase of Company stock.

52.     Driver's construction of First United's Bylaws is nonsensical, and it would have the effect of vesting the power to vote with a share of stock, not with the person who owns the stock.

53.     In any event, First United may interpret its own Bylaws as a matter of the internal affairs of the corporation.  Applying First United's long-standing interpretation of Article II, Section 4 of its Bylaws, Defendants are not eligible to nominate candidates for election to the Board because Defendants are not stockholders "entitled to vote" as they are in fact prohibited from voting for the election of directors as a result of their violations of FI Article § 3-314, that ineligibility to vote extending for five years from the most recent date on which any Defendant acquired shares of First United common stock.

54.     Given the parties' differing positions, there exists an actual controversy of justiciable issues between Defendants and First United within the jurisdiction of this Court to resolve with respect to whether Defendants may nominate candidates to serve as Company directors at Company shareholder meetings within five years of the Defendants' most recent purchase of Company stock.

WHEREFORE, Plaintiff First United hereby seeks a declaration from this Court:

(a)     finding and declaring that, pursuant to Article II, Section 4 of the Bylaws, Defendants were and are ineligible or unable to nominate candidates for election to the Board at any meeting of shareholders that is held during the time period during which such Defendant is prohibited from voting its shares of First United common stock for the election of directors, including at the 2020 Meeting and at future meetings that take place during the five (5) year period that commenced on the most recent date on which any Defendant acquired shares of First United common stock;

(b)     finding and declaring that First United is not required to permit Defendants to make any nominations of director candidates with respect to any meeting of shareholders that is held during the time period during which they are prohibited from voting their respective shares of First United common stock – that is, for a period of five years following Defendants' most recent purchase of Company stock;

(c)     finding and declaration that First United was not required to recognize Defendants' nominations of Michael J. Driscoll, Lisa Narrell-Mead, or Ethan C. Elzen, at the 2020 Meeting;

(d)     finding, declaring and directing that the results of the 2020 Meeting be recertified by the independent Inspector of Elections duly appointed by First United, the

recertification to reflect that Defendants' nominations of the Driver Candidates were invalid and of no effect; and

(e)      awarding First United its reasonable attorneys' fees and costs, and any further relief the Court deems necessary.

Dated:  September 8, 2020            By:      /s/ George F. Ritchie
                                              George F. Ritchie, CPF # 9306230292
                                              GORDON FEINBLATT LLC
                                              The Garrett Building
                                              233 East Redwood Street
                                              Baltimore, MD 21202
                                              Tel:  (410) 576-4131
                                              Fax:  (410) 576-4269
                                              gritchie@gfrlaw.com

                                              Michael L. Charlson* (CA Bar 122125)
                                              Meghan L. Natenson* (CA Bar 312634)
                                              VINSON & ELKINS LLP
                                              555 Mission Street, Suite 2000
                                              San Francisco, CA  94105
                                              Tel:  (415) 979.6900
                                              Fax:  (415) 651.8786
                                              mcharlson@velaw.com
                                              mnatenson@velaw.com

                                              * pro hac vice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of September, 2020, a copy of the foregoing was served through the Court's electronic filing system on all counsel of record.

                                              /s/  George F. Ritchie
                                              George F. Ritchie